Madden, Judge,
delivered the opinion of the court:
The plaintiff sues for flight pay, i. e., the 50 percent which he says should have been added to his pay as an officer, for the period December 1,1947 to February 28,1949. His military career is recounted in detail in our findings of fact. Only those parts of it immediately relevant to the discussion will be given in this opinion.
In January 1941, the plaintiff held a commission in the Field Artillery Eeserve. He was in that month called to extended active duty. Because of civilian experience in flying, he was rated as a “service pilot” and was put on flying status, i. e., he was “required to participate in regular and frequent aerial flights.” He held this rating and flying status throughout World War II, and received flight pay.
The “service pilot” rating was established by the Army Air Corps in the early days of World War II when there was a shortage of .pilots. One who had only the rating of service pilot could not be assigned to aerial combat duty.
*704 After the war the plaintiff in 1946 returned to inactive duty status and remained in that status until June 16,1947, on which date he returned to active duty as a Lieutenant Colonel, Army Air Corps Eeserve. During the period of his inactive status he had applied for the aeronautical rating of pilot. A board of officers was convened to examine his qualifications. It found that he was qualified and recommended that he be ordered to Orlando Air Force Base, Orlando, Florida, to take the flight test examination. Such orders were issued on June 9,1947, and on June 25 the board which conducted the flight test examination recommended that he be granted the aeronautical rating of pilot.. The official orders, rerating him from service pilot to pilot, and requiring him to participate in regular and frequent aerial flights while serving on active duty with the Army Air Forcé were not. issued until July 31,1947.
In the meantime the plaintiff had, as we have seen, returned to active duty with the Air Corps on June 16,1947. On June 19 he was appointed a First Lieutenant in the Regular Army, and he accepted the appointment on June 30. This was the beginning of his troubles. Under the applicable regulations, officers of the Regular Army who held ratings as service pilot were not eligible for rerating as pilot, but were to be suspended' from flying duty. Since the plaintiff had become an officer in the Regular Army on June 30, the issuance of his rating as pilot on July 31 had been an administrative error, and it and his orders to participate in flights were revoked by new orders issued on October 17,1947. .
The plaintiff was, at the time of these latest orders, stationed at a base in Greenland. On December 6, 1947, he was verbally notified by his commanding officer there that his flying orders had been rescinded, and later in December he received copies of the October 17 orders. He had, between July 31 and December 6, done considerable flying arid received flight pay for it, which the Government does not ask him to refund. But after he received notice of the October 17 orders he logged 27 hours’ first-pilot time and 5 hours 5. minutes’ copilot time. He submitted a voucher for flight pay for December and collected $200.52 flight pay for that month. His commanding officer, about February 2, 1948, *705 instituted proceedings for the revocation of the plaintiff’s, commission, because he had claimed and collected flight pay for December. A board of officers recommended that the* plaintiff’s commission be revoked.
The plaintiff refunded the $200.52 and demanded a court- • martial trial. Such a trial was held in Washington, D. C.,.. in November 1949, on charges of fraud, making a false statement to his commanding officer, and absence without leave.. The plaintiff was acquitted, the acquittal being announced on-; J anuary 23,1950.
In 1948 the policy prohibiting officers in the Eegular Army- and the Eegular Air Force from being rerated from service pilot to pilot was changed. - On June 16,1948, the Air Force-notified the plaintiff and other officers similarly situated that they might apply for a rerating from service pilot to pilot.. The plaintiff applied, and was examined on July 6, 1948.. The examining board recommended his rerating. But the-orders rerating him and placing him on flying status were-not issued until January 24,. 1950, which was the day after-his acquittal by the court-martial.
The reason for the withholding of the plaintiff’s orders--, was the pendency of the charges, against him and the court-martial proceedings. We have no reason to conclude that there was anything arbitrary or capricious about the Air-Force’s withholding what was, in effect, a promotion to an officer while he was under charges. The letter quoted in finding 17 stating that the writer would “not permit official: action regarding [plaintiff’s] rerating to be affected by disciplinary considerations” seems to have been meant by the-writer to say that the plaintiff would not be prevented from applying and being examined for his rerating because he-was under charges. He was not, in fact, so prevented, as we have seen, and his official orders were issued immediately after his acquittal. We think the Air Force did not violate the law nor its own regulations in withholding his orders.
The plaintiff relies strongly on Executive Order 9195 of'. July 7,1942, as amended, which says:
2. Each officer * * * who is a qualified aircraft pilot. and who is not unfit for duties as such, and who is commissioned in the Army Air Corps or on duty with the Army Air Forces * * * shall be required to participate- *706 regularly and frequently in aerial flights; orders requiring such flights shall be issued by the Commanding General of the Army Air Forces or by such officers as he may designate * * *.
The plaintiff was without a doubt a “qualified aircraft pilot” in the factual sense that he was an able flier. But he was-not qualified in the sense of having the official rating required by other regulations. Even if he had been, we think that though a commanding general might be in violation of the Executive Order in not issuing orders requiring the officer to fly, the officer would not be entitled to flight pay under the statute if in fact he did not fly, and fly under orders.
The plaintiff’s petition will be dismissed. It is so ordered.
LaeamoRe, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
BINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner William E. Lay, and the briefs and argument of counsel, makes findings of fact as follows:
1. Section 18 of the Act of June 16, 1942 (56 Stat. 368; 37 U. S. C. 118), provides in part as follows:
Sec. 18. Officers, * * * of any of the services mentioned in the title of this Act and members of the Reserve forces of such services, and the National Guard shall receive an increase of 50 per centum of their pay when by orders of competent authority they are required to participate regularly and frequently in aerial flights, and when in consequence of such orders they do participate in regular and frequent flights as defined by such Executive orders as have heretofore been, or may hereafter be, promulgated by the President: * *' *. [Emphasis supplied.]
2. Plaintiff sues for $5,009.24, the 50 percent flight pay increase from December 1, 1947 to February 28, 1949, on the basis that he held or should have held the rating of pilot during this period, and that he was or should have been on flying status during this period, by reason of orders issued on July 31,1947.
3. Plaintiff’s Army service goes back to 1937. Plaintiff was appointed Second Lieutenant, Field Artillery Reserve, *707 on May 31, 1937, and accepted on June 1, 1937. He was assigned service number 0-352511. He was promoted to First Lieutenant (permanent) on July 17, 1940. He was promoted to Captain, Army of the United States, on April 8, 1942, with rank from February 1, 1942, and accepted April 13, 1942. He was promoted to Major (temporary) on March 18,1943. He Avas promoted to Lieutenant Colonel (temporary) on September 21, 1944. He was appointed Lieutenant Colonel, Air Corps Reserve, on February 1,1946, and accepted on February 1,1946. He was appointed First Lieutenant, Regular Army, on June 19, 1947, with rank from February 5,1944, and accepted on June 30, 1947. He was assigned service number 0-44879. He was appointed Lieutenant Colonel, Air Force of the United States, on June 30,1948, with rank from October 22,1945, and accepted September 7, 1948. He was promoted to Captain, Regular Air Force, on October 25,1948, with rank from July 1,1948. He was promoted to Major, Regular Air Force, on April 28.1952, with rank from December 6,1951, and as of August 18.1952, was a Lieutenant Colonel, United States Air Force (Major, Regular Air Force, 6827A). He was appointed Colonel, United States Air Force, June 18, 1952, with rank from June 1,1952.
4. Plaintiff entered upon extended active duty under his Field Artillery Reserve Commission on January 20, 1941. On June 15, 1942, Personnel Orders No. 142 were issued by Headquarters of the Army Air Forces, Washington, D. C., under paragraph 57 of which plaintiff was rated as service pilot by reason of his civilian experience in flying, and under paragraph 58 of which plaintiff was put on flying status, that is, was “required to participate in regular and frequent aerial flights.” Plaintiff held this rating and flying status throughout World War II.
5. The aeronautical rating of service pilot was established by the Army Air Corps during the early days of World War II when there was a great need for pilots. The rating of pilot could only be attained by officers in the Regular Army by completing regular courses at an Army Primary Flying School. Service pilot ratings were given to those officers who, because of their civilian experience and qualifications, were, *708 after recommendation of appropriate boards of officers and necessary flight checks and physical examination, considered to be qualified. While rated as a service pilot, an officer could not be assigned to combat.
6. After the end of hostilities, plaintiff, on February 1, 1946, was relieved from duty and put on terminal leave which expired on May 12,1946, at which time he returned to inactive duty status. On February 1,1946, plaintiff was tendered and accepted a new commission in the Army Air Corps Reserve as a Lieutenant Colonel. Plaintiff remained in an inactive duty status from May 12,1946 until June 16, 1947, when he returned to active duty as a Lieutenant Colonel, Army Air Corps Reserve.
7. While on inactive duty as a Reserve officer, the plaintiff who was then a Lieutenant Colonel, Air Corps Reserve, made application for aeronautical rating of pilot. A Reserve officer, as distinguished from an officer in the Regular Army, could acquire the rating of pilot without attending an Army Primary Flying School. On January 24, 1947, a board of officers convened at Marietta Army Air Field, Marietta, Georgia, to determine the plaintiff’s qualifications to be re-rated from service pilot to pilot. This board made certain findings and recommended:
1. That Lt. Colonel James E. Johnston, 0-352511, AC Reserve, be re-rated from service pilot to pilot or heavier-than-air aircraft.
The record is silent as to any action taken by higher authority on the above-quoted recommendation, but on March 27, 1947, the plaintiff made written application addressed to the Commanding Officer, Marietta Army Air Field, Marietta, Georgia, for aeronautical rating of pilot. The letter was signed by him as “Lt. Colonel, Air Corps Reserve, 0-352511.” Another board of officers convened on March 28, 1947, at Marietta Army Air Field, Marietta, Georgia, the stated purpose of which was:
To examine the qualifications of Lt. Colonel James E. Johnston, 0.-352511, Air Corps Reserve, for rating as pilot under the provisions of paragraph 3c (2), AAF Regulation 50-7, 10 July 1946.
*709 The findings made by this board recited that the applicant was physically qualified, that he had been granted a rating as service pilot on June 15,1942. It detailed the plaintiff’s record of flying time and stated that the applicant was “exempted from the written professional examination. The •concluding finding is quoted below:
5. Upon the basis of examination of records, indicating the types of aircraft and missions flown, that the applicant has the qualifications of and is ready for assignment to duties appropriate for a pilot who has graduated from an AAF pilot school (advanced).
In view of the findings referred to above, the board recommended that the plaintiff be ordered to Orlando Air Force Base, Orlando, Florida, to take the flightiest examination.
8. By Special Orders No. Ill, dated June 9,1947, an Aeronautical Bating Board was appointed at Headquarters, Fourteenth Air Force, ADC, Orlando, Florida. Paragraph 19 of such special orders reads as follows:
19. PAC Ltr Hq AAF file AFPMP-10 17 Sep 46 Subj: “Granting of Aeronautical Eatings to Beserve Officers on Inactive Status” AAF Beg 50-7 and ADC Beg 35-14 an Aeronautical Bating Board is aptd at this Hq to meet at the call of the President thereof for the transaction of such business under these directives as may properly be brought before it. All records now in the hands of the board aptd by Par 11 SO 101 this Hq cs will be turned over to the Becorder of the Board aptd herein.
The board appointed by the special orders referred to above convened at Orlando Army Air Base on June 25,1947. The stated purpose of the convening of the board is shown in the record of proceedings as follows:
PURPOSE:
To examine the qualifications of Lt. Colonel James E. Johnston, 0-352[5] 11, Air Corps Beserve, for change of rating from Service Pilot to Pilot under the provisions of Paragraph 3c (2), AAF Begulation 50-7, dated 10 July 1946.
The board examined the Beport of the Aeronautical Bating Board, .Headquarters, 4204th AAF Base Unit (AB), Marietta Army Air Field, Marietta, Georgia, on 28 March 1947, the Flight Test Beport dated 5 May *710 1947, and the WD AGO Form 64, Physical Examination, dated 24 June 1947.
The board recommended:
That Lt. Colonel James E. Johnston, 0-352[5]ll, Air Corps Reserve, be granted the aeronautical rating of Pilot.
9. Paragraph 8 of Personnel Orders No. 149, issued July 31, 1947, by Headquarters, Army Air Forces, Washington, provides as follows
8. The following-named officers, Air-Res., having qualified for rerating from Service Pilot to Pilot, are rated Pilot, under the provisions of AR 95-60, and paragraph 3c (2), AAF Regulation 50-7, dated 10 July 1946:
Lt Col James E. Johnston, 0-352511
*****
10. Paragraph 9 of Personnel Orders No. 149 issued on the same date by the same authority provides as follows:
9. Pursuant to authority contained in paragraph 2, subparagraph 2, AR 35-1480, the following-named officers, Air-Res., are required to participate in regular and frequent aerial flights during such time that they hold currently effective aeronautical ratings while serving on active duty with the Army Air Forces under competent authority, and are authorized, in accordance with the provisions of AR 95-15, to participate in regular and frequent aerial flights during such time as they hold currently effective aeronautical ratings while on an inactive status:
Lt Col James E. Johnston, 0-352511
*****
11. In the meantime, the plaintiff had, on June 16, 1947, returned to active duty with the Air Corps, and on June 19, 1947, was appointed First Lieutenant in the Regular Army and accepted on June 30, 1947. His serial number was changed from 0-352511, his Air Corps Reserve number, to 0-44879, his Regular Army Serial number.
12. On October 17,1947, Personnel Orders No. 204, Headquarters, United States Air Force, Washington, were issued revoking the order rerating plaintiff from service pilot to pilot and rescinding the order putting plaintiff on flying status.
*711 Paragraph 1 of these orders provided as follows:
1. So much of Paragraphs 8 and 9, Personnel Orders No. 149, Headquarters, Army Air Forces, dated 81 July 1947, as granted Lieutenant Colonel James E. Johnston, 0-44879, Eegular Air Force, the aeronautical rating of Pilot and provided him with flying status through an administrative error, is hereby revoked.
Paragraph 2 of these orders provided as follows:
2. Determination having been made that maintenance of the primary technical skill denoted by the aeronautical rating held by Lieutenant Colonel James E. Johnston, 0-44879, Eegular Air Force, is not necessary in the interest of the military service, orders which detailed him to flying duty are hereby rescinded.
13. On October 27,1947, a letter was sent from Headquarters, Army Air Forces, Washington, signed by the Deputy Chief, Military Personnel Division, by order of the Secretary of the Air Force, to the Commanding General, Air Transport Command, and by indorsement through channels, and was received by the plaintiff on or about December 6, 1947. The letter reads as follows:
1. Inclosed herewith are copies of orders which revoke so much of paragraphs 8 and 9, Personnel Orders 149, this Headquarters, dated 31 July 1947, in the case ox Lieutenant Colonel James E. Johnston, 0-44879.
2. Paragraphs 8 and 9, Personnel Orders 149, rated Colonel Johnston as Pilot and placed him on flying status as an officer of the Air Corps Eeserve. These orders were issued upon the basis of Aeronautical Eating Board proceedings recommending the issuance of a Pilot rating to Colonel Johnston as an officer of the Air Corps Eeserve on inactive status. On 30 June 1947, prior to the issuance of Personnel Orders 149, subject officer had accepted a commission in the Eegular Army, vacating his commission in the Air Corps Eeserve. Therefore, the orders granting him a rating and placing him on flying status as an Air Corps Eeserve officer have been revoked by Paragraph 1, Personnel Orders 204, this Headquarters, dated 17 October 1947, copies of which are inclosed.
3. Officers of the Eegular Army are not eligible for rating as Pilot under the provisions of Paragraph 3c (2), AAF Eegulation 50-7. As stated in our TWX WCL 44996, dated 20 August 1947, rerating and flying *712 status orders have been issued, effective upon date of acceptance of commissions in the Regular Army, for all officers integrated in the 19 June 1947 group who hold ratings as Command Pilot, Senior Pilot, Pilot, Aircraft Observer (Bombardier, Navigator, Radar, or Flight Engineer) and who were on flying status when relieved from active duty. Officers who held other ratings, including Service Pilots, were to be suspended from flying status and reported to this Headquarters for confirmation.
4. On the date subject officer accepted his Regular Army commission, he held a rating as Service Pilot. Subject officer will not be granted an aeronautical rating and placed on flying status as a Regular Air Force officer. For record purposes, the inclosed orders confirming his suspension from flying status have been issued. It is requested that Colonel Johnston acknowledge receipt of the suspension orders by indorsement hereon and that this correspondence be filed in his field 201 file. If, for any reason, the inclosed orders are not delivered to him, it is requested that they be returned to this Headquarters by indorsement hereon giving the reason for nondelivery.
By ORDER on the Secretary oe the Axr Force :
14. At the time Personnel Orders No. 204 were issued on 'October 17, 1947, plaintiff was stationed at Headquarters, 'Greenland Base Command, Narsarssuak, Greenland. Plaintiff received verbal notice on December 6, 1947, from his commanding officer that his flying status orders of July 31, 1947, had been rescinded, and later in December 1947 received copies of the orders of October 17, 1947. Plaintiff had done considerable flying between July 31, 1947, and December 6, 1947, and has been paid and has retained the 50-percent increase in pay for this flying time. It is not in issue in this case. After plaintiff received notice that his flying status orders had been rescinded, plaintiff logged 27 hours’ first pilot time and 5 hours 5 minutes’ co-pilot time. The first of this time was logged on December 10, 1947, when plaintiff knew that his flying status orders of July 31, 1947, had been rescinded and when he knew that he was not on flying status. Plaintiff’s log for December 1947 was later corrected to show no flying time in December 1947 because his flying status orders had been rescinded.
*713 Officers were authorized and required to participate in frequent and regular flights only when orders were issued by the Commanding General of the Army Air Forces, or, after the Air Force became autonomous, by the Chief of Staff of the Air Force, or by officers specifically designated by either of these. The Base Commander at Narsarssuak, Greenland, plaintiff’s commanding officer, had no authority to issue flying status orders to plaintiff and did not in fact issue such orders. Between December 1947 and January 24, 1950, plaintiff did no flying except as a passenger or when taking flight tests for an aeronautical rating which he later received in 1950, and during the same period he logged ■no flying time on flying status.
15. After logging flying time in December 1947, following notice that his flying status orders had been rescinded, plaintiff signed and submitted a voucher in the amount of $200.52 claiming flight time for December 1947. On the basis of his representations he was paid and received this amount as flight pay for this period. On or about February 2,1948, plaintiff’s commanding officer instituted proceedings for the revocation of plaintiff’s commission. These proceedings grew out of plaintiff’s action in claiming flight pay after his flying status orders had been rescinded. Plaintiff appeared before a board of officers which recommended that plaintiff’s commission be revoked. On February 18, 1948, plaintiff paid back to the Government the $200.52 which he had received as flying pay for the month of December 1947.
16. After plaintiff was advised of the recommendation of the board of officers to revoke his commission, he demanded a court-martial trial. Plaintiff was tried by general court-martial in November 1949 in Washington, D. C., on charges and specifications alleging fraudulent conduct in connection with his claim for flight pay for December 1947. They were as follows:
ChaRge I: Violation of the 94th Article of War.
Specification: In that Lieutenant Colonel James E. Johnston, Hq and Hq Squadron, MATS, Andrews Air Force Base, Washington 25, District of Columbia, then assigned to the 1385th AAF Base Unit, Army Post Office 858, BW-1, Greenland, [did] on or about 31 December 1947, present for approval and payment a claim *714 against the United States by presenting to C. W. Carras, 1st Lieutenant, USAF, Finance Officer at BW-1, Greenland, an officer of the United States, duly authorized to approve and pay such claims, a claim in the amount of $200.52, for flying services rendered to the United States during the month of December 1947, by the said Lieutenant Colonel James E. Johnston, which claim was false and fraudulent in that Lieutenant Colonel Johnston was not on flying status since his flying duty orders had been rescinded on or about 8 December 1947, and was then known by the said Lieutenant Colonel James E. Johnston to be false and fraudulent.
CHARGE II: Violation of the 95th Article of War.
Specification 1. In that Lieutenant Colonel James E. Johnston, Hq and Hq Squadron, MATS, Andrews Air Force Base, Washington 25, D. C., then assigned to the 1885th AAF Base Unit, Army Post Office 858, BW-1, Greenland, did at BW-1, Greenland, on or about 81 December 1947, wrongfully and officially certify on his pay and allowance account, WD Form 836, that he, Lieutenant Colonel James E. Johnston, held an aeronautical rating, and was, by orders of competent authority, required to participate regularly and frequently in aerial flights, which certificate was known by the said Lieutenant Colonel James E. Johnston to be false.
Specification 2. In that Lieutenant Colonel James E. Johnston, Hq and Hq Squadron, MATS, Andrews Air Force Base, Washington 25, D. C., then assigned to 1385th AAF Base Unit, Army Post Office 858, BW-1, Greenland, did, at Goose Bay, Labrador, on or about 11 January 1948, with intent to deceive his Commanding Officer, Lieutenant Colonel Bichard C. Kugel, officially report in writing to said Lieutenant Colonel Bichard C. Kugel that Colonel Bobert B. Selway, Jr., Deputy Commander, Newfoundland Base Command, recommended that he, Lieutenant Colonel Johnston, go to Westover to check on the backlog situation and take the necessary couple of days as delay enroute, that Colonel Bobert B. Selway, Jr., stated, subject to Colonel Kugel’s approval, Newfoundland Base Command had no objection to Lieutenant Colonel James E. Johnston going down to Westover, which report was known by said Lieutenant Colonel James E. Johnston to be untrue in that Colonel Bobert B. Selway, Jr., did not recommend that Lieutenant Colonel James E. Johnston go down to Westover to check in on the backlog situation and take the necessary couple of days delay enroute, in that Colonel Bobert B. Selway, Jr., did not state to Lieutenant Colonel James *715 E. Johnston, that subject to Lieutenant Colonel Richard C. Kugel’s approval, Newfoundland Base Command had no objection to Lieutenant Colonel Johnston going down to Westover.
Chaege III: Violation of the 61st Article of War.
Specification. In that Lieutenant Colonel James E. Johnston, Hq and Hq Squadron, MATS, Andrews Air Eorce Base, Washington 25, D. C., then assigned to the 1385th AAF Base Unit, Army Post Office 858, BW-1, Greenland, did, without proper leave, absent himself from his station at Army Post Office 858, BW-1, Greenland, from about 13 January 1948 to about 21 January 1948.
Plaintiff was acquitted, and the acquittal was announced ¡by General Court-Martial Order No. 1, Headquarters, Military Air Transport Service, Andrews Air Force Base, Washington, D. C., dated January 23,1950.
17. On February 6, 1948, Lieutenant General Idwal H. Edwards, Deputy Chief of Staff for Personnel and Administration, United States Air Force, addressed and sent the ■following letter to General Joseph T. McNarney, Commanding General, Air Materiel Command, United States Air Force:
CONEIDENTIAI.
6 Feb 1948
General Joseph T. McNarney
Commanding General
Air Materiel Command
Wright-Patterson Air Force Base Dayton, Ohio
Dear General McNarney:
This is in reply to your letter of 26 January 1948, re.garding the rerating from Service Pilot to Pilot of Lt. Colonel James E. Johnston, who was recently integrated into the Regular Air Force.
I agree with you that we cannot have an Air Force of the highest type as long as we permit extreme injustices to be perpetrated upon our personnel; neither can we accomplish our purpose if we allow the “Adjutant General type of mind” to influence the execution of Air Force policies. I assure you that as long as I have a part in determining policy, I will do my utmost to present such occurrences.
You may have noted from the information furnished by Colonel Johnston, that a technicality of regulations *716 was used in bis case to enforce the Air Force policy of granting the Pilot rating to Regular Air Force officers only if they are graduates of the flying training system. He applied for a change of rating from Service Pilot to Pilot while in an inactive status, and it was entirely proper and in accordance with regulations for him to obtain the rerating while in a Reserve inactive status. However, it has been Air Force policy since April 1946, that Regular Air Force officers or other officers on active duty not be permitted to change their rating from Service Pilot to Pilot. At that time, decision was reached that the purpose for which the Service Pilot rating was granted had been accomplished. In order to implement this decision and at the same time be of assistance in meeting mandatory demobilization quotas, Service Pilots were declared surplus to the needs of the Air Force under current demobilization regulations. They were permitted the option of separation from the service, or suspension from flying if they elected to remain on active duty and were approved for retention.
I have had a restudy made of this entire situation. Decision has been reached to give all former Service Pilots who are now on active duty another opportunity to qualify for a change in rating from Service Pilot to Pilot. This will include the integrated Regular officers along with the others who were suspended from flying . and retained on active duty. Such action will constitute a final cleanup of the Service Pilot rating for all active duty personnel, thereby eliminating further basis for claims of discrimination such as the one presented by Colonel Johnston.
I am asking General Cannon to set up a special flight test board which will provide the necessary refresher training and final flight test for all the Service Pilots now on active duty. Service Pilots will be sent to this final flight test board if they are found to possess all other qualifications for rerating and are recommended by the Commanding General of the command to which assigned.
I am inclosing for your information a paraphrase of a confidential message received by the Commanding General, Air Transport Command, from Colonel Johnston’s Commanding Officer. From the contents of this message, you will realize that I hesitate to order his rerating before further investigation. I intend to keep in personal touch with developments in this case and will not permit official action regarding his rerating to be affected by disciplinary considerations. It may be of interest to *717 you to know that his 201 file reveals three contacts made by Congressmen on two different occasions in attempts to influence official decision in matters affecting him.
1 am glad to have you bring to my attention matters of this nature.
Sincerely yours,
I. H. EDWARDS
Lieutenant General, TJSAF
Deputy Chief of Staff
Personnel & Administration
2 Incl :
1. Ltr fm Col Johnston
2. Paraphrase of message
18. The policy prohibiting officers in the Regular Army, and later in the Regular Air Force, from being rerated from service pilot to pilot was later changed. Ten former service pilots, among them plaintiff, who had been integrated into the Regular Army or Regular Air Force and had been serving as non-flying officers, had applied for such rerating and had been turned down. On June 16, 1948, the Air Force waived the provisions of AAFR 50-7, paragraph 3c (2), dated July 10,1946, so as to permit these officers, including plaintiff by name, to apply for a rerating from service pilot to pilot. This waiver provided that applications should be initiated prior to October 1,1948, when the waiver would expire. Plaintiff thereafter made application to be rerated from service pilot to pilot, and as a consequence of this application, plaintiff appeared before an Air Force Aeronautical Rating Board on July 6,1948. Plaintiff was recommended by this board to be rerated from service pilot to pilot. As a result of the recommendation of this board, plaintiff was rated as a pilot and placed on flying status on January 24,1950, by Personnel Orders No. 16 from the Department of the Air Force. These orders provided as follows:
10. LT COL JAMES E JOHNSTON, 6827A, TJSAF, is rated PILOT under the provisions of AR 95-60, paragraph 3c, AFR 50-7, dated 10 July 1946, as amended, and instructions of the Chief of Staff, TJSAF.
11. Pursuant to authority contained in paragraph 2, subparagraph 2, AR 35-1480, dated 29 Jan. 46, as amended, LT COL JAMES E JOHNSTON, 6827A, *718 USAF, who holds an aeronautical rating, is hereby required to participate in regular and frequent aerial flights.
19. Plaintiff did not have the rating of pilot between December 7, 1947, and January 28, 1950.
20. Plaintiff was not on flying status between December 7,1947, and January 23,1950.
21. A Regular Army officer who held the rating of service pilot during the war could not be related from service pilot to pilot after July 10,1946. By Army Air Forces Regulation 50-7 dated July 10, 1946, a Regular Army officer could be rated as a pilot only if he was a graduate of an Army Air Forces pilot school (advanced). Plaintiff never graduated from any Army Air Forces or Air Force pilot school (advanced) , or any flight training school of the Army Air Forces or the Air Force.
This regulation, AAFR 50-7 dated July 10, 1946, provided in pertinent part as follows:
2. Who May Bate and Who May Be Bated:
a. The Commanding General, AAF, or such officer or officers as he may designate, may grant aeronautical ratings specified in and under conditions set forth in paragraph 3, to:
(1) Officers, warrant officers, flight officers, and enlisted men of the Army of the United States on duty with the AAF;
3= * * * <i
3. Batings and Bequirements for the Attainment Thereof:
3= * * * *
c. Pilot:
(1) Individuals specified in paragraph 2a (1), may be rated as pilot, provided they:
(a) Have successfully completed within the two years preceding date of application a prescribed course of instruction for heavier-than-air pilots at an AAF pilot school (advanced); and are physically qualified for duty as pilot, class 1; or
(b) Have. successfully completed, prior to the two years preceding date of application, a prescribed course of instruction for heavier-than-air pilots in an A AF pilot school (advanced); are physically qualified for duty as pilot, class 1 or 2, and in addition:
*719 1. Have flown as pilot of heavier-than-air aircraft,, powered with engines of 400 or more horsepower, 25-hours or more alone; i. e., no other pilot of heavier-than-air aircraft having access to the controls in the airplane, except when a copilot is required, within the 12 months. preceding date of application; and
£. Demonstrate by a flight test conducted at an AAF station designated by the Commanding General, AAF,. to conduct flight tests for the rating of pilot their ability - to operate safely and efficiently a tactical, advanced training, or cargo type airplane in accordance with paragraph 7d, and
3. Are recommended by a board of officers for such, ratings; or
(2) Individuals specified in paragraph 2a (1), other than members of the Regular Army, who are physically-qualified for pilot duty, class 1 or 2, may be rated as pilot, provided they:
(a) Have flown as pilot of heavier-than-air aircraft 1,000 hours or more, of which: 300 hours or more were flown alone, i. e., no other pilot of heavier-than-air aircraft having access to the controls in the aircraft except when a copilot is required; 400 hours or more were flown in aircraft powered with engines of 400 or more horsepower, of which 50 hours or more were flown within the 12 months preceding the date of application; and in addition:
1. Demonstrate by a flight test conducted at an AAF" station designated by the Commanding General, AAF, to conduct flight tests for the rating of pilot, their ability to operate safely and efficiently a tactical, advanced training, or cargo type airplane in accordance with paragraph 7d, and
Successfully complete the written examination-prescribed in paragraph 7e, and
3. Are recommended for such rating by a board of officers which has determined, as a result of examination of records indicating the types of aircraft and missions flown, that the applicant has the qualifications of and is ready for assignment to duties appropriate for a pilot who has graduated from an AAF pilot school (ad--vanced). [Emphasis supplied.]
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and his petition:, is dismissed.